**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Julie K. Hanson-Haukoos,

Plaintiff,

Civ. No. 05-1575 (RHK/JJG)
**MEMORANDUM OPINION AND ORDER**

v.

Hormel Foods Corporation,

Defendant.

---

Donaldson V. Lawhead, Lawhead Law Office, Austin, Minnesota, for Plaintiff.

Thomas L. Nuss, Hormel Foods Corporation, Austin, Minnesota, for Defendant.

---

## INTRODUCTION

In this action, Plaintiff Julie K. Hanson-Haukoos ("Haukoos") alleges that her employment was terminated by Defendant Hormel Foods Corporation ("Hormel") in retaliation for seeking workers' compensation benefits and in breach of her union's collective bargaining agreement; she also alleges that she was defamed by Hormel. Hormel now moves for summary judgment on each of Haukoos's claims. For the reasons set forth below, the Court will grant Hormel's Motion in part and dismiss her claim for breach of contract; the Court will decline to exercise supplemental jurisdiction over her remaining claims and will remand these claims to state court for further proceedings.

## BACKGROUND

## I. Haukoos's Duties and Injuries at Hormel

On June 9, 1997, Haukoos began working for Hormel at its plant in Austin, Minnesota. (Haukoos Aff. ¶ 3; Haukoos Dep. Tr. at 6.) From that date until 2002, she worked night shifts operating plant machinery and loading trucks. (Haukoos Dep. Tr. at 6-8.) During this time, she suffered several work-related injuries to her neck, shoulder, knees, back, and wrists. (Haukoos Aff. ¶¶ 10, 13, 14, 27, 28, 33.)

On May 14, 2002, Haukoos underwent surgery to treat a work-related shoulder injury. (Id. ¶¶ 16, 18.) Because of this surgery, she did not work between May 14 and August 26, 2002. (Id. ¶ 19.) On July 8, 2002, Haukoos's attorney sent Hormel a notice of representation, which stated that each of her injuries was work-related and that she would pursue workers' compensation benefits for those injuries. (Lawhead Aff. Ex. B.)

When Haukoos returned to work, she switched to day shifts and performed light-duty jobs. (Haukoos Dep. Tr. at 8-9; Haukoos Aff. ¶ 44.) During this time, she was restricted from lifting over 1 pound, squatting, climbing, twisting, bending and reaching, pushing, pulling, grasping, fine manipulation, or operating foot controls. (Haukoos Aff. ¶¶ 45-47.) She was also restricted from sitting or standing in one place for a period of greater than 2 hours. (Id. ¶ 48.) On November 25, 2002, Haukoos injured her right eye at work, resulting in a permanent loss of vision. (Id. ¶ 36.) On March 11, 2003, she filed a claim for workers' compensation benefits for the five injuries she claims to have suffered between December 12, 1997 and November 11, 2002. (Nuss Decl. Ex. 2.)

## II. The Collective Bargaining Agreement & Haukoos's Termination

Haukoos was a member of the United Food and Commercial Workers Union, Local P-9 (the "Union"). (Haukoos Dep. Tr. at 22-24; Haukoos Dep. Ex. 1.) Relations between Hormel and the Union were governed by the Collective Bargaining Agreement ("CBA"). (Haukoos Dep. Tr. at 22-23; Haukoos Dep. Ex. 1.) Under the terms of the CBA, an employee who was issued three "strikes" from Hormel was subject to "immediate discharge." (Haukoos Dep. Ex. 1 at 30.)

Between December 6, 2002 and July 9, 2003, Hormel issued five "strikes" to Haukoos pursuant to the CBA[1]. (Nuss Decl. Ex. 6; Haukoos Dep. Ex. 1 at 30, 64.) Haukoos asserts that Hormel issued her the strikes in an effort to terminate her employment. (Haukoos Aff. ¶¶ 60, 85-86.)

On July 14, 2003, Hormel suspended Haukoos because she had been issued five strikes. (Nuss Decl. Ex. 6.) On July 15, 2003, Scott Haynes, Human Resources Manager at Hormel's Austin, Minnesota, Plant met with Haukoos to discuss the strikes she had been issued. (Haynes Decl. ¶¶ 1, 12.) Haynes determined that Haukoos was subject to employment termination pursuant to the CBA and, on July 16, 2003, Hormel terminated her employment. (Id. ¶ 12.) Hormel's stated reason for terminating Haukoos's employment was that she had been issued "3 strikes within a 12 month period." (Id. Ex. 9.)

---

[1]Haukoos asserts that Hormel provided false reasons for issuing these strikes to her. (Haukoos Dep. Tr. ¶¶ 126-32; .) As discussed below, the Court concludes that it need not address this issue to resolve the instant Motion. (See infra 10-15.)

On July 15, 2005, Haukoos brought the instant action in Minnesota state court, alleging three claims for relief: 1) Hormel violated Minn. Stat. § 176.82, prohibiting employers from discharging an employee in retaliation for seeking workers' compensation benefits or for the purpose of obstructing the employee from seeking workers' compensation benefits (see Compl. ¶¶ 4-10); 2) Hormel breached the CBA by terminating her employment without just cause (see id. ¶¶ 11-15); and 3) Hormel defamed her because she was compelled to tell prospective employers the reasons for her employment termination (see id. ¶¶ 16-21).

Hormel removed the case to this Court on the ground that Haukoos's claims are completely preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"). Its Motion for Summary Judgment followed.

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the non-moving party. See Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir.

2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The non-moving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

### I. Jurisdiction

Haukoos initially argues that this Court does not have subject-matter jurisdiction over the instant case because her claims are not completely preempted by the LMRA; accordingly, the Court must remand the matter to state court rather than rule on the Motion. For the reasons stated below, the court concludes that the breach of contract claim is completely preempted by the LMRA and, therefore, that the Court has subject-matter jurisdiction over that claim and supplemental jurisdiction over the other claims.

**A. Complete Preemption**

The doctrine of preemption arises from the Supremacy Clause of the Constitution and requires that state law yield when it conflicts with or frustrates federal law. Chapman v. Lab One, 390 F.3d 620, 624 (8th Cir. 2004). State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, or when state law directly conflicts with federal law. Id. Ordinarily, federal preemption is merely a defense to a plaintiff's state law claim, and it does not alter the jurisdiction of the federal court. Id. at 625.

The doctrine of "complete preemption," however, establishes more than a defense to a state law claim. Id. In limited circumstances, the Supreme Court has concluded that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts' an ordinary state . . . law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)). When an area of state law has been "completely preempted," any claim "purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. (quoting Caterpillar, 482 U.S. at 393). Accordingly, "'complete preemption' of a state law cause of action provides a basis for removal of an action to federal court." Id.

**B. Preemption Under the LMRA**

The doctrine of "complete preemption" has been applied in cases arising under the LMRA. Chapman, 390 F.3d at 629. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The LMRA completely preempts state-law claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." Shuver v. Midamerican Energy Co., 154 F.3d 795, 799 (8th Cir. 1998) (citing Caterpillar, 482 U.S. at 394). If the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," that claim is preempted. Hanks v. Gen. Motors Corp., 906 F.2d 341, 343 (8th Cir. 1990) (citing Allis-Chambers Corp. v. Lueck, 471 U.S. 202, 213 (1985)). However, "[i]f the claim is not 'inextricably intertwined' with a collective bargaining agreement, that claim is independent and is not preempted." Id. (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)).

It follows that "a state law claim may involve analysis of the same set of facts as a claim arising under the collective bargaining agreement without compelling preemption." Id. (citing Lingle, 486 U.S. at 407-08); accord Luecke v. Schnucks Markets, Inc., 85 F.3d 356, 359 (8th Cir. 1996). "[W]hen the meaning of contract terms is not the subject of

dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (citing Lingle, 486 U.S. at 413 n.12). In other words, "[m]ere reference to a collective bargaining agreement is not sufficient to result in preemption." Thomas v. Union Pacific R.R. Co., 308 F.3d 891, 893 (8th Cir. 2002).

### C. Haukoos's Claims

#### 1. Wrongful Discharge

Haukoos first alleges that Hormel violated her rights under Minn. Stat. § 176.82[2] ("Section 176.82") by terminating her employment in retaliation for seeking workers' compensation benefits.

Retaliation claims under Section 176.82 are analyzed under the McDonnell-Douglas three-part burden-shifting test. Miller v. CertainTeed Corp., 971 F.2d 167, 171 (8th Cir. 1992) (citing Snesrud v. Instant Web, Inc., 484 N.W.2d 423, 427-28 (Minn. Ct. App. 1992)). To establish a *prima facie* claim of retaliation, Haukoos must show that: (1) she engaged in protected conduct; (2) an adverse employment action was taken by Hormel; and

---

[2] **Subd. 1. Retaliatory discharge.** Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee. . . .

**Subd. 2. Refusal to offer continued employment.** An employer who, without reasonable cause, refuses to offer continued employment to its employee when employment is available within the employee's physical limitations shall be liable in a civil action for one year's wages. . . .

(3) there was a causal connection between the two. See Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983). Hormel must then come forward with a legitimate non-discriminatory reason for the adverse employment action. See id. at 445. Finally, the burden shifts to Haukoos to show that Hormel's reason is pretextual or "to otherwise carr[y] [her] overall burden of persuasion." Id.

Haukoos relies on this Court's decision in Carlson v. Arrowhead Concrete Works, Inc., 375 F. Supp. 2d 835 (D. Minn. 2005), to support her argument that her claim is not completely preempted because it focuses on Hormel's motivation in issuing her strikes. (Mem. in Opp'n at 18.) In Carlson, it was determined that an employee's retaliation claim was not completely preempted by the LMRA when his employer failed to rehire him despite his seniority status and a CBA provision requiring the employer to rehire workers based on seniority. See id. The Court reasoned that "[e]stablishing a claim for retaliation. . . . only requires an analysis of factual questions pertaining to [the employee's] conduct and [the employer's] conduct and motivation and requires no analysis of any provisions or terms of the [CBA]." (Id. at 482.)

In Carlson, this Court relied on Lingle, in which the Supreme Court held that a unionized employee's state law action based on the Illinois tort of retaliatory discharge was not preempted by the LMRA. Lingle, 486 U.S. at 401, 407. Lingle analyzed the elements of retaliatory discharge under Illinois law to determine whether preemption was appropriate. Id. at 407. These elements were: 1) the employee was discharged or threatened with discharge and 2) the employer's motive was to deter him from exercising

his rights to workers' compensation. Id. The Supreme Court found that the retaliatory discharge claim raised "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of the collective-bargaining agreement." Id. Like Carlson and Lingle, Haukoos argues that she is alleging factual issues regarding Hormel's motivation in terminating her employment. (Mem. in Opp'n at 17.)

Hormel asserts that Haukoos's claim of wrongful termination is completely preempted by the LMRA because the Court must interpret the CBA to determine whether a causal connection exists between her claim for workers' compensation benefits and her employment termination. (Mem. in Supp. at 9-10.) It attempts to distinguish Carlson and Lingle on the ground that, in the instant case, Haukoos's employment was terminated only after she received three strikes under the CBA. (Reply Mem. at 3.) There is no dispute that Haukoos, having accrued three strikes, was subject to employment termination under the CBA. Accordingly, Hormel asserts that Haukoos's argument "centers around her belief that [Hormel] violated the [CBA] by [improperly] issuing her disciplinary strikes." (Reply Mem. at 3.) It argues that the Court must not analyze Hormel's motivation to discharge Haukoos; instead, it must interpret the CBA to determine whether Hormel properly issued strikes prior to discharging Haukoos. (Id.)

Haukoos, however, does not argue that Hormel "violated" the CBA when it issued her strikes. Rather, she argues that the strikes were issued to her in retaliation for the exercise of her workers' compensation rights. (Compl. ¶ 6.) As in Lingle, the Court is not

required to interpret the CBA in order to evaluate such a claim. As this Court stated in Carlson, "[t]he possibility that [she] could have raised claims under the [CBA], but chose not to do so in [her] Complaint, does not compel a finding that preemption is warranted." 375 F. Supp. 2d at 842. Accordingly, her claim that she was wrongfully discharged – that Hormel retaliated against her in violation of Section 176.82 – is not preempted because it only requires the Court to analyze the factual questions and motivation of Hormel's supervisors when they issued her strikes.

**2. Breach of Contract**

Hormel next argues that Haukoos's claim for breach of contract is preempted by the LMRA. Haukoos alleges:

> Plaintiff worked under a contract which provided job securities such that Plaintiff could not be fired except for just cause.
>
> Defendant discharged Plaintiff on the alleged pretextual grounds that Plaintiff had excess absences.

(Compl. ¶¶ 13-14.)

The contract Haukoos alleges Hormel breached is the CBA. Hormel argues that Haukoos's allegation that it breached the CBA is founded directly on rights created by the CBA. Haukoos has not attempted to rebut this argument.[3] The LMRA completely preempts causes of action for breach of collective bargaining agreements. Oberkramer v. IBEW-NECA Serv. Ctr., 151 F.3d 752, 756 (8th Cir. 1998). For the Court to determine whether

---

[3]At oral argument, counsel for Haukoos conceded that her breach of contract claim is founded upon rights created by the CBA.

Hormel breached the CBA when it terminated Haukoos's employment, it must necessarily interpret the CBA's provisions for job security. Accordingly, the Court determines Haukoos's breach of contract action is completely preempted by the LMRA.

**3. Defamation**

Haukoos alleges that:

> Defendant Employer fired Plaintiff Employee on alleged pretextual grounds of excessive, unexcused absences or no call/no show absences which were not true, and other alleged grounds. As a result, when applying for jobs, Plaintiff was compelled to tell [prospective] employers that she was fired for making a workers' compensation claim and other defamatory communications.

(Compl. ¶ 17.) Hormel argues that this claim is completely preempted by the LMRA because the Court must analyze the CBA to determine whether Haukoos's employment was terminated for reasons which were "not true." (Mem. in Supp. at 11.)

As explained above, an evaluation of Hormel's motivation in issuing strikes to Haukoos does not require an analysis of the CBA. Accordingly, the Court determines that Haukoos's claim of defamation is not completely preempted by the LMRA.

**D. Conclusion**

Based on the foregoing, the Court determines that Haukoos's breach of contract claim is completely preempted by the LMRA and that her claims for wrongful termination and defamation are not. Accordingly, the Court has subject-matter jurisdiction over the action. The Court, having original jurisdiction over an action, has supplemental jurisdiction over claims so related to the action that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). In the instant case, the facts giving rise to Haukoos's breach of contract claim are identical to the facts giving rise to her wrongful termination and defamation claims. Accordingly, the Court has supplemental jurisdiction over Haukoos's wrongful termination and defamation claims.

**II. Summary Judgment for Breach of Contract**

Hormel argues that the Court should grant summary judgment on Haukoos's breach of contract claim because she did not exhaust her remedies under the CBA. (Mem. in Supp. at 12-13.) The CBA provides that "a grievance procedure is hereby established for the purpose of resolving any differences between the Company and the Union as to the meaning and application of the provisions of this Agreement." (Haukoos Dep. Ex. 1 at 27.) The CBA then sets forth a series of steps by which the Union and Hormel are to proceed in resolving a grievance, ultimately resulting in arbitration. (See id. at 27-28.) The step in this process immediately prior to arbitration allows the Union to appeal grievance decisions of lower level supervisors to the plant manager, who must then make a written reply to the grievance. (Id. at 28.) The CBA also provides that "[i]n the event the grievance

is not resolved to the satisfaction of the Union in any of the preceding steps, [it] shall have thirty (30) calendar days from the receipt of the plant manager's reply letter to accept the plant manager's answer to the written appeal, or to refer the matter to arbitration." (Id. at 28-29.)

Pursuant to the terms of the CBA, the Union submitted grievances for three of Haukoos's strikes. (Haynes Aff. ¶ 11, Ex. 8.) These grievances proceeded through the steps provided in the CBA. (Id.) On March 25, 2003, Hormel's General Manager for the Austin Plant, Jeffrey Nuytten, denied two of the grievances and on August 18, 2003, he denied the third grievance. (Id.) On March 11, 2004, the Union notified Hormel that it was withdrawing all of its grievances for Haukoos's strikes. (Id.) Hormel argues, therefore, that the Court should grant summary judgment on Haukoos's breach of contract claim because she failed to refer the matter to arbitration and did not fully pursue her claims under the procedures provided in the CBA. (Mem. in Supp. at 12.)

Haukoos responds that the grievance procedure does not apply to the instant action because actions based on Section 176.82 are not founded upon rights created by the CBA. (Mem. in Opp'n at 20-21.) Her breach of contract action, however, is not predicated on her Section 176.82 rights. Instead, it is based on her right to be free from employment termination except for "just cause" – a right that she alleges derives from the CBA. (Compl. ¶ 13.) As stated above, for the Court to evaluate the merits of this argument, it must necessarily interpret the CBA. Therefore, Haukoos's breach of contract action involves the "meaning and application" of her rights under the CBA and is subject to the

grievance procedure of the CBA. Haukoos utilized that grievance procedure and lost; she failed to exhaust her appeal rights in that proceeding. Accordingly, the Court will grant summary judgment in favor of Hormel on Haukoos's breach of contract claim.

**III. Supplemental Jurisdiction**

Hormel argues that the Court should exercise supplemental jurisdiction over the non-preempted causes of action. (Reply Mem. at 4.) Federal courts "have supplemental jurisdiction" over claims which are "part of the same case or controversy" as a claim over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). Courts, however, have wide discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In exercising that discretion, the Court "should consider and weigh in each case, and at every stage of litigation," the factors of "judicial economy, convenience, fairness and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

In the instant case, the Court will grant summary judgment on the only claim over which it has original jurisdiction, Haukoos's breach of contract claim. Hormel has not argued, nor does the Court conclude, that the instant case provides a particular threat to judicial economy, convenience, fairness or comity such that the other claims should remain with this Court. Accordingly, the Court will decline to exercise supplemental jurisdiction over Haukoos's claims for wrongful termination and defamation and will remand those claims to state court.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendant Hormel's Motion for Summary Judgment (Doc. No. 19) is **GRANTED IN PART** as follows:

1. Count Two of Plaintiff Haukoos's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**;
2. The Court expressly determines that there is no just reason for delaying the entry of a final judgment as to Count Two and the Clerk is expressly directed to enter judgment as to Count Two;
3. The Court **DECLINES** to exercise supplemental jurisdiction over the claims asserted in Counts One and Three of the Complaint; and
4. The Complaint (Counts One and Three) is **REMANDED** to Mower County District Court and the Clerk of this Court shall mail a certified copy of this Memorandum Opinion and Order to that Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 26, 2006

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge